PAULINE B. LEE *vs*. KUTUSOFF N. MACFEE.

45   33<br>61  258

December 4, 1890.

**Summons—Service at Usual Abode — Boarding-House — Defendant absent from Country.**—A debtor having a permanent residence in the city of M. in this state, and having no home or usual place of abode therein, except a boarding-house, was temporarily absent in Europe on business, when a summons in an action against him was served by leaving a copy thereof at such boarding-house, with a person of suitable age and discretion then and there residing. The evidence tended to show that certain articles of personal property were left there by him when he went away, and that he expected to return to the same place to board when he came back to the city. *Held* sufficient to warrant the decision of the trial court in refusing to set aside the judgment for want of jurisdiction.

Appeal by defendant from an order of the district court for Hennepin county, *Hooker*, J., presiding, denying his motion to set aside, for want of jurisdiction, a judgment of $4,128.79, recovered against him on his failure to answer.

*E. D. Jackson*, for appellant.

*C. M. Wilkinson*, for respondent.

VANDERBURGH, J. Judgment was rendered by default against the defendant for the amount claimed, upon proof of the service of the summons "on the defendant by leaving a true copy thereof at the house of the usual abode of said defendant, No. 525 Fifth street south, in the city of Minneapolis, in the said county of Hennepin, with Mrs. Porter Tremain, a person of suitable age and discretion then resident therein, and that said copy was then and there personally delivered to and left with Mrs. Tremain." The defendant afterwards moved upon affidavits to set aside the judgment, on the ground that there was no lawful service of process on him. The affidavits tended to show that the house where the summons was left was not then his usual place of abode. The motion was opposed by the plaintiff, who introduced opposing affidavits. The question of fact as to his place of abode was determined adversely to the defendant

v.45M.—3

by the trial court, and, from the order denying the motion, this appeal is brought.

The only question for us to consider is whether there is sufficient evidence disclosed by the record to support the decision of the court below. *First Nat. Bank* v. *Randall*, 38 Minn. 382, (37 N. W. Rep. 799.) The record shows that the defendant is an unmarried man, and it is admitted that his residence is still at the city of Minneapolis. He was absent in Europe when the summons was served. Up to the time he left, and for some considerable time previous thereto, he had been boarding, and made his home at the house where the service was made. He was engaged in the real-estate business and in negotiating loans, and up to this time has had an office in the city with his present attorney, with whom he kept up correspondence in his absence. The latter swears that in the prosecution of his business the defendant has been in the habit of making frequent visits to the eastern cities and to Europe, on such occasions being absent from two to five months. He left in July, 1889, and was unexpectedly delayed by his business, so that he was still absent when the summons was served. His affidavit also shows that the defendant had no other home than a boarding-house in Minneapolis, and it appears that the boarding-house referred to could have been none other than the one above mentioned, and it nowhere appears that he had abandoned this place of abode or selected another. The person with whom the summons was left, states, in a supplemental affidavit used in opposition to the motion, that the defendant came to her house "about May 7, 1889. From that time until he left in July, he was continuously living at our house. He was treated substantially like one of the family. He lodged there, took his meals there, and had full access to and use of, and did use, the main living rooms and facilities of the house in substantially the same manner as a member of the family. When he went away in July last, I understood that he was going east, and from there to Europe. From what was said, and from all the circumstances, although I cannot remember exactly what was said, it was the expectation that on his return to Minneapolis he would come back to our house to live as before. A trunk, pictures, and some other effects

were left there at the house. I am not sure that they were all his. Some of them may be his sisters'. They all belong to the family, and were in his charge. Mr. Macfee first came to our house about October 1, 1888; two sisters came also about November 1, 1888. The defendant went away on a trip (to Europe as I understood it) in January, 1889. He was gone until about May 7, 1889, when he returned to Minneapolis. At that time he came to our house, and lived there, as I have said, until the following July. The defendant has been at our house continuously since about October 1, 1888, excepting while gone on the two trips of which I have spoken." His residence was, then, the city of Minneapolis. He was temporarily absent, expecting to return soon. His home or usual place of abode in the city was, when he left, at the house in question, and there is no evidence that he intended to change it. Doubtless, if the defendant failed to get actual notice before judgment was entered, the court would have opened it, upon a seasonable application, to admit a meritorious defence; but the defendant does not ask any such relief, but stands upon the jurisdictional question. And upon this we think there is sufficient to support the decision of the court. *Love* v. *Cherry,* 24 Iowa, 204.

Order affirmed.