MISSOURI, KANSAS & TEXAS TRUST COMPANY v. SHERMAN R. NORRIS and Others.[1]

June 3, 1895.

Nos. 9493—(107).

### Service of Summons—"House of Usual Abode."

The term "the house of his usual abode," as used in G. S. 1894, § 5199, subd. 4, means a person's customary dwelling place or residence. It is not the equivalent of domicile in all particulars, for one's place of abode or home once acquired does not necessarily continue until another one is obtained.

### Same—Married Man.

In the case of a married man the house of his usual abode is prima facie the house wherein his wife and family reside.

[1] Reported in 63 N. W. 634.

**Finding Sustained.**

> Evidence examined, and *held*, that it sustains a finding that the summons and complaint in this case were duly served by leaving copies with the wife of the defendant, at "the house of his usual abode."

Appeal by defendant Sherman R. Norris from an order of the district court for St. Louis county, Lewis, J., denying his motion to set aside the judgment and for leave to answer and defend. Affirmed.

*J. B. Richards*, for appellant.

*Wm. C. White*, for respondent.

START, C. J. This was an action to foreclose a real-estate mortgage made by the defendant and his wife to the plaintiff on their homestead. Personal service was made on the defendant Emma Norris on October 14, 1892; and the summons and complaint were served on the defendant Sherman R. Norris at Lester Park, in the county of St. Louis, in this state, on October 28, 1892, by leaving a copy of the same at the house of his usual abode with his codefendant and wife, Emma Norris, a person of suitable age and discretion then resident therein. His wife employed a lawyer to defend the action for him, who answered, setting up usury as a defense, and after stipulating the facts withdrew his appearance, and the case proceeded to judgment, which was entered March 8, 1893. On June 9, 1894, a motion was made on behalf of the defendant Sherman R. Norris, on the affidavits of himself, his wife, and the attorney who appeared for him, to set aside the judgment as to him, and permit him to answer and defend on the ground of usury; and from an order of the district court of St. Louis county denying his motion he appealed.

The appellant claims that the court erred in making the order because (1) he was entitled, as a matter of right, to have the judgment set aside, for the reason that the summons was never served upon him, and the court never acquired jurisdiction in the premises; (2) that it was an abuse of discretion to deny his motion.

1. Conceding that the appearance of the attorney for him, on the employment of his wife, was unauthorized, the question of jurisdiction depends upon whether or not the house wherein his wife was living, and wherein and with whom a copy of the summons and complaint was left for him, was also the house of his usual abode.

This is a question of fact. and we are only to consider whether the record discloses evidence reasonably tending to support the finding of the court, necessarily implied in its order, to the effect that the place of service was the house of the defendant's usual abode. Lee v. Macfee, 45 Minn. 33. 47 N. W. 309; Bausman v. Tilley, 46 Minn. 66, 48 N. W. 459.

The term used in the statute providing for substituted service, "the house of his usual abode," is not the equivalent of domicile in all particulars, for one's place of abode or home once acquired does not necessarily continue until another one is obtained. A tramp may have a domicile, but no house of his usual abode. The term means a person's customary dwelling place or residence. Keller v. Carr, 40 Minn. 428, 42 N. W. 292. It is admitted that at the time of the service of the summons and complaint in this case, by leaving a copy thereof with the wife of the defendant. she and his family were living on his homestead, where he had lived with them prior to June 14, 1892, 4½ months prior to the service. This fact makes a strong prima facie case that on the day of the service the house where his wife and family resided was also his house of usual abode. In addition to this, we have the sheriff's return, which is prima facie correct.

Opposed to this robust prima facie case, we have the affidavits of the defendant and his wife. Eliminating from the wife's affidavit all conclusions and hearsay statements of fact, it supports the order appealed from. What the defendant has done or omitted to do since October 28, 1892, the date of the service, is here immaterial. She states as a fact that she was living at the time of the service on the homestead with her family, and in the house where the defendant had resided previous to June 14, 1892, when, as she says, he left his home and the city of Duluth; and, further, that she received no communication from him after about November 8, 1892, 11 days after the service, which clearly implies that she did receive a communication from him on that date. Passing to the affidavit of the defendant, the statements of fact here material are that the copies of the summons and complaint were left at the house where he resided before leaving Duluth, but that he has not been in Duluth since on or or about June 14. 1892: that soon thereafter (how soon he does not state) he gave up and abandoned his residence in Duluth, and

ceased to claim a residence therein long before October, 1892; but as to what he did, where he went, and where he dwelt, from which the court could test the accuracy of his conclusions and declarations of his intent expressed a year and a half after the event, he is as silent as the grave. He further states that he had (but when, whether before or after the service, he does not state) given up all idea of again residing with or living with his wife and family. No excuse or justification is given for this alleged violation of honor and duty. His affidavit is discredited upon its face, not only by what it does state, but in the way it is stated, and in what it fails to state.

The trial court was clearly justified in finding that the presumption that the house of his usual abode was where his wife and family were residing at the time the service was made was not rebutted by the affidavits of the defendant and his wife.

2. The court having acquired jurisdiction by the service of the summons upon the defendant, it was a matter of discretion with it whether or not the defendant should be permitted to answer, and there was no abuse of such discretion in denying such permission. The defendant communicated with his wife 11 days after the service. He knew that he had given a mortgage on his homestead, and presumably that default had been made in its conditions; and ordinary diligence on his part and attention to his business and family would have led to a knowledge of the pendency of the action.

Order affirmed.