[No. 4213.   Decided September 15, 1902.]

NORTHWESTERN AND PACIFIC HYPOTHEEK BANK, *Respondent*, v. WILLIAM M. RIDPATH, *as Administrator, Appellant.*

JUDGMENTS — DIRECT ATTACK BY CROSS COMPLAINT.

When a defendant files a cross-complaint and seeks affirmative relief, it is in the nature of an original action, and an attack on a judgment made in such cross-complaint is a direct, not a collateral, attack.

SUMMONS — AFFIDAVIT OF SERVICE — OVERCOMING PRESUMPTION FROM SHERIFF'S RETURN.

The sheriff in his return to a summons set forth that defendant could not be found in the county and that to the best of his information he resided in New York city; an *alias* summons was issued and served by a private individual, who made affidavit that he served said defendant at the house of his usual abode in Spokane by leaving with his wife, then residing there, a copy of the summons and complaint. *Held*, that due service on defendant was shown, since the sheriff's return of non-residence was not conclusive, but only presumptive evidence, inasmuch as the statute does not require such return to set forth the defendant's residence, and any presumption arising from such return was overcome by the affidavit of personal service.

SAME — SUFFICIENCY OF SERVICE — PRESUMPTIONS.

Where an affidavit of service of summons by a private individual merely recited conclusions of affiant as to such service, instead of setting forth necessary facts, it was sufficient to raise a presumption of proper service, and where such proof was not attacked in the original proceeding, but the court found

that personal service had been made, a court of equity will sustain the judgment in a subsequent attack made on account of such irregularity.

SAME — RETURN OF SERVICE — USUAL ABODE.

The return of service of a summons showing that it was left at the house of defendant's "usual abode in the city of Spokane" does not import that defendant had another residence elsewhere.

SAME — EVIDENCE OF FACTS RECITED.

The return of service of process, either by a sheriff or by a disinterested person authorized by law to make it, is *prima facie* evidence of the facts recited therein, and a court of equity should not set aside a judgment on the ground of lack of service except upon clear, satisfactory and convincing proof.

SAME — DEFENDANT'S USUAL ABODE — PROOF OF CHANGE.

In an action to set aside a judgment for lack of service, the fact that a defendant made statements on leaving the state to intimate friends or to his wife that he expected to locate elsewhere and not return would not be sufficient to establish that he had changed his residence, when his wife and family continued to reside in his usual place of residence, and he had been absent but a short time, engaged on a pleasure trip, and had not taken up any definite abode, at the date service was made by leaving a copy of the summons and complaint for him with his wife at their usual place of abode.

SAME — BURDEN OF PROOF.

An abode once acquired is presumed to continue until it is shown to have been changed by acquiring another permanent abode, and the burden of proof rests upon the person asserting the change.

SAME.

In the case of a married man, the house of his usual abode is the house wherein his wife and family reside.

Appeal from Superior Court, Spokane County.—Hon. George W. Belt, Judge. Affirmed.

*Judson & Geraghty,* for appellant.

*Post, Avery & Higgins,* for respondent.

The opinion of the court was delivered by

White, J.—This action was brought for the purpose of quieting title to certain property, being some two hun-

dred and fifty lots in Cannon's Addition in the city of Spokane. There was service of process upon each of the defendants, and default duly entered against each of them except William M. Ridpath, as administrator *de bonis non* with the wills annexed of the community estate of Anthony M. Cannon and Jennie F. Cannon, deceased. Mr. Ridpath, as administrator of the community estate, filed an answer herein, and he alone, and in that capacity alone, appeals from the decree in favor of the plaintiff. He did not answer or appeal as administrator of the estate of A. M. Cannon, nor as administrator of the estate of Jennie F. Cannon, nor are any of the other defendants appellants herein. The complaint contains the usual allegations in an action of this character. The answer of Ridpath, as administrator of the community estate of both Cannons, alleges by way of cross-complaint, in brief, that plaintiff's title is based on decrees of foreclosure of three several mortgages given to the plaintiff by A. M. and Jennie F. Cannon, his wife; that these actions were commenced after the death of Jennie F. Cannon, but before the death of A. M. Cannon; that in those actions H. E. Houghton, as executor of the last will and testament of the said Jennie F. Cannon, and A. M. Cannon and others, were named as parties defendant; that at the time of the commencement of said action A. M. Cannon was residing in the city of New York, and that he continuously lived and resided in said city from on or about January 10, 1895, until April 6, 1895, when he died there, and that neither personal service of summons nor service by publication was made upon him, and he did not appear in said actions; that plaintiff knew at the time of entering decrees of foreclosure therein that A. M. Cannon had changed his place of residence from the county and city of Spokane to the city of New York, and that no summons or process of any

kind had ever been served upon him; that, notwithstanding such knowledge, it prepared the decrees, and had it recited and stated therein that Cannon was personally served with process in Spokane county, and caused execution to be issued, and the sheriff to sell the said property thereunder, and give plaintiff sheriff's deeds therefor, it being the accepted bidder upon the sales; that the defendant was misled and deceived by the recitals in the decrees, and did not know of the failure to serve process upon Cannon until the commencement of this action; that Jennie F. Cannon died September 8, 1893; that her will was probated October 10, 1893, and that H. E. Houghton and J. W. Binkley were the executors named in said will, and duly qualified as such; that on February 23, 1894, Binkley resigned as executor, and his resignation was accepted by the court, and Houghton continued to act as such executor until September 29, 1897, when he died; that A. M. Cannon died April 6, 1895, and on May 24, 1895, his will was admitted to probate in Spokane county, and H. E. Houghton was duly appointed executor thereof, qualified, and continued so to act until his death; that thereupon Ridpath was appointed administrator, etc., that the three several foreclosure actions were commenced in January, 1895, and decrees entered therein in March, 1895; that there are claims against said community estate unpaid, and there is not sufficient personal property to pay the same. The prayer of the answer is that the judgments and sheriff's deeds aforesaid be canceled and set aside. It is not specifically alleged in said answer what right, title, or interest Ridpath, as administrator of the community estate, claims to have in the property in question. The reply of plaintiff admits the death of Jennie F. Cannon, the probating of her will, the appointment and qualifications of the executors therein, the resignation

of Binkley as executor, the continuance of Houghton as
executor, his death, the appointment of Ridpath as ad-
ministrator, the death of A. M. Cannon, the probating of
his will, the appointment and qualification of Houghton
as executor, the foreclosure of the three several mortgages
above mentioned, and the execution of sheriff's deeds to it;
and denies each and every other allegation in the answer
and cross-complaint contained.    The reply further states
that, at the time of the commencement of said actions, H.
E. Houghton was the duly appointed, qualified, and act-
ing executor of the estate of Jennie F. Cannon, and, with
the knowledge, consent, and approval of said A. M. Can-
non, was administering upon the community estate of both
the Cannons, and continued to so administer from the time
of his appointment until his death, and that said Hough-
ton, in his official capacity, and said Cannon, and each and
every other defendant in each of said foreclosure actions,
were duly served with summons and complaint in Janu-
ary, 1895, and judgment was duly and properly rendered
against each and all of them in each of said actions in
March, 1895; that the indebtedness sued upon was the
community indebtedness of both of said Cannons, and at
the time of the commencement of said actions, and at the
time of taking judgments therein, and at all times referred
to, said Houghton was in the confidence of said Cannon,
knew all of the facts concerning his residence and abiding
place and the method of serving process in said actions, the
taking of judgments, sale of the property, and the various
steps taken by the plaintiff thereafter concerning the same;
that the plaintiff used every effort and the utmost good
faith in serving the summons and complaint in each of
said actions on A. M. Cannon, and has been guilty of no
fraud, concealment, or misrepresentation concerning the
same; that the plaintiff purchased all of the property

named in each of said mortgages under said decrees, for
the full amount of said judgments and mortgages, in good
faith, and in the belief that it was acquiring perfect, com-
plete, and absolute title to all of said property, and can-
celed and released of record all of said judgments in like
good faith and upon such consideration, and immediately
took possession thereof, and since said time has expended
large sums of money in improvements thereof and therefor,
and in the payment of taxes thereon, and in the construc-
tion of a street railroad thereto for the purpose of making
said property accessible and making said lots salable, and
has sold a large number of said lots, giving warranty deeds
therefor, and the purchasers thereof have built residences
and homes and made valuable and lasting improvements
thereon,—all of which has been done in perfect good faith
on the part of the plaintiff and its grantees, and without
objection, disapproval, or notice of any claim whatsoever
from or by any of the various executors or administrators
of the Cannons' estates, or any of the heirs thereof, or
devisees or legatees; that in this action all of the heirs,
devisees, and legatees of said estates have been made par-
ties defendant, and summons and complaint have been
duly served upon them, and none of them have appeared
in any manner, although time therefor has fully expired,
and claim of default has been entered against each and
every of them.    The mortgages referred to are as fol-
lows:   One dated November 24, 1891, from A. M. Can-
non and Jennie F. Cannon, his wife, to the plaintiff,
amount $50,000, mortgaging a part of the property de-
scribed in the complaint; one dated April 29, 1893, from
A. M. Cannon and Jennie F. Cannon, his wife, to the
plaintiff, amount $30,000, mortgaging another part of the
property described in the complaint; one dated May 27,
1891, from William C. Stainsby and Ralph L. Clarke and

wife to the plaintiff, amount $50,000, mortgaging the re-
mainder of the property described in the complaint.
Stainsby and Clarke deeded the property described in the
mortgage to A. M. Cannon May 27, 1891, and Cannon
therein assumed the said mortgage. The plaintiff com-
menced three several actions to foreclose these mortgages
in January, 1895. It is admitted by the defendant that
the plaintiff loaned the amount of money mentioned in
these mortgages, and that said mortgages were valid. Sum-
mons and complaint were served on Houghton and Can-
non in these three several cases as follows: In one case
on January 10, 1895, in one case on January 12, 1895, in
the other, on January 23, 1895. The decrees in these sev-
eral cases were all signed and filed on different days in
the month of March, 1895. Executions were issued
thereon, placed in the hands of the sheriff, notice given as
required by law, and sales made thereunder by the sheriff
to the plaintiff for the full amount of the mortgage and
judgment in each case, and the judgments satisfied of rec-
ord. Said sales took place in May, 1895, and were there-
after, and in June, 1895, duly confirmed by order of the
court, and thereafter, and in June, 1896, sheriff's deeds
in each case were given to the plaintiff, no redemption
having been made. The plaintiff took possession of all of
the property in question immediately upon said sales be-
ing made in May, 1895, and has remained in possession
thereof ever since, and has paid the general taxes assessed
against the same for the year 1893 and each subsequent
year, amounting all told to the sum of $25,801.80; has
paid special improvement taxes for grading streets and
side-walking during these years various sums amounting
to $8,231.56; has paid for extending city water mains
into the property in question the sum of $6,393.73; has
completed and paid for a street railroad running from the

center of the city into the heart of the property in question, so as to make the lots therein valuable, the sum of $21,-933.25; has sold a part of the property to various individuals, who have built residences and homes thereon, and expended in such improvements the sum of $86,600. All of the parties having the remotest interest in said property as heirs, devisees, or otherwise were made parties defendant and served with process in each of said foreclosure actions. All of the parties who would now have any interest in and to said property as heirs, devisees, or otherwise, if these mortgages had not been foreclosed, were made parties defendant in this action, each and all of them were served with summons and complaint therein, each and all of them are in default and judgment has been entered against them, and none of them have appealed from said judgment, except Ridpath, who did so solely in the capacity of administrator of the community estate. Ridpath does not allege or attempt to prove that the three several decrees were not in fact correct in every particular, or that, if they were set aside, he would have any defense whatsoever to the claims; nor does he allege or attempt to prove that he has ever offered to pay the mortgage indebtedness, or any part thereof, or has ever offered to redeem, nor does he in his cross-complaint offer to do any of these things, or offer anything else of an equitable character. On the other hand, the evidence shows facts that, as a matter of law, as held by this court, would make the mortgages barred by the statute of limitations if the sheriff's deeds and decrees of foreclosure were set aside. The evidence also shows the utmost fairness and good faith on the part of the plaintiff at all times in this matter, and there is no fact save the testimony of Eleanor B. Cannon from which any other inference can be drawn. The court below, in its findings of fact, found that the property in question,

at the time of the death of Jennie F. Cannon, was the
community property of both Cannons, subject to the three
several mortgages given to and held by the plaintiff; that
due service of summons and complaint in the foreclosure
action was made in the manner provided by law upon each
and every one of the defendants therein, and decrees of fore-
closure were rendered in each of said actions, and filed in
March, 1895, in the usual form, and also the other facts
concerning the foreclosure actions set up in the reply; that
at the time of the commencement of said action, said
Houghton was in possession of all the community property
of said Cannon, including the property in question in this
action, and was managing, controlling, and administering
in all respects upon the same, with the knowledge, consent,
and approval of said A. M. Cannon, and under orders of
the superior court of Spokane county, and had legal title
in his said official capacity to the property in question;
that it was not contended by the defendant Ridpath upon
the trial that the plaintiff's mortgages were not, in fact,
valid liens upon the property therein described for the
amount of indebtedness set forth in the complaint and de-
crees of foreclosure, nor that he or Cannon or any one else
had any defense to the three foreclosure actions; that the
only contention made by Ridpath in this case is that A. M.
Cannon was not served with summons and complaint in
fact, as recited in said decrees of foreclosure; that plaintiff
knew at the time of taking said decrees that such service
was not made, but that the proof in this case establishes
that such service was in fact made upon A. M. Cannon,
and that the plaintiff used every effort and the utmost good
faith in the matter, and has been guilty of no fraud, con-
cealment, or misrepresentation whatsoever; that the plaint-
iff purchased all of the property upon the sales for the full
amount of said judgments in good faith, canceled and re-

leased of record said judgments, took possession of said property, and has expended large sums of money in valuable improvements thereon and therefor, and in the payment of taxes thereon, and for the construction of a street railroad thereon for the purpose of making said property valuable and accessible, to the amount of $62,360, has sold to third parties seventy-eight of said lots, giving warranty deeds therefor, and the said purchasers have built residences and homes thereon, of the value of $86,000; that all of the same has been done during the period of five years before the commencement of this action, in absolute good faith on the part of the plaintiff, without objection, disapproval, or notice of any claim whatsoever from any of the various executors and administrators aforesaid, or any of the heirs, devisees, or legatees of either of the Cannons; that in this action all of the devisees, legatees, and heirs of the estate of both Cannons have been made parties defendant, and summons and complaint have been duly served upon them, and none of them have appeared in any manner, or objected to the plaintiff obtaining the decree asked for herein; that the defendant Ridpath has not offered in this case, or before the commencement thereof, to pay the indebtedness referred to in said three mortgages, or any part thereof, or made any other offer tending towards the liquidation thereof, and that no payments have been made thereon by said Cannons, or any of the said administrators and executors, since the death of Jennie F. Cannon, in September, 1893; that the plaintiff is the owner in fee simple absolute of all of the property described in the complaint, and none of the defendants have any estate, right, title, or interest whatsoever, either at law or in equity, to any part thereof.

A cross-complaint is in the nature of an original action. *Powell v. Nolan,* 27 Wash. 318 (67 Pac. 712). When the

defendant files a cross-complaint, and seeks affirmative relief, he becomes the plaintiff, and the plaintiff in the original action becomes defendant in the cross-complaint. Pomeroy, Remedies & Remedial Rights, § 808. Under the authority of *Christofferson v. Pfennig,* 16 Wash. 491 (48 Pac. 264), and *Krutz v. Isaacs,* 25 Wash. 566 (66 Pac. 141), we think the cross-complaint is a direct attack upon the judgment. We assume that A. M. Cannon was a necessary party defendant in the foreclosure action, and further we assume that the defendant Ridpath has an interest, legal or equitable, in the subject matter of this controversy, as he was made a party defendant by the respondent on the theory that he had an interest. The evidence, however, does not convince us that the finding of the court in the foreclosure cases and in this case that Cannon was in fact duly served with process in the foreclosure cases was wrong. We think there was proof of service in each of the foreclosure proceedings. The three suits were numbered as follows, 9,001, 9,012, and 9,046, and we shall refer to them hereafter by such numbers, instead of by their titles. There are a number of persons and corporations named in each action as defendants, including A. M. Cannon. In 9,001 the affidavit of service, omitting title and the names and service on the defendants other than A. M. Cannon, is as follows:

"State of Washington, County of Spokane, ss.

O. R. McDonald, being duly sworn, deposes and says, that he served the annexed summons and complaint in the above entitled action on the defendants   .   .   .   A. M. Cannon   .   .   .   at the city of Spokane in Spokane county, state of Washington, on the 10th of January, 1895.   .   .   .   That he effected such service on the defendant A. M. Cannon at the house of his usual abode in the city of Spokane aforesaid and on the day above stated, by then and there delivering to and leaving with

one Eleanor B. Cannon, the wife of said A. M. Cannon, she being a person of suitable age and discretion, then resident in said house, a copy of said summons and a copy of said complaint. . . . That all of the copies above referred to were duly certified by Binkley & Taylor, attorneys for the plaintiff in the above entitled action, to be true and correct copies of the original summons and complaint, respectively, in said action. And deponent further says that at the time of making such service as aforesaid, he was over the age of twenty-one years, and was not at such time and is nct now a party to said action, and that he is now and was, at the time of making such service, competent to be a witness in said action.

O. R. McDONALD.

Subscribed and sworn to before me this 17th of January, 1895.                         J. W. WHEATLEY,

Notary Public Residing at Spokane, Wash."

The affidavit of service of O. R. McDonald in 9,012 is substantially the same as that in 9,001, except the service was on the 12th of January, 1895. The affidavit of service of O. R. McDonald in 9,046 is substantially the same as in 9,001 and 9,012, except the service was on the 23d of January, 1895, and except the manner of such service on A. M. Cannon is alleged as follows:

"That he effected such service on the defendant John R. Allen at the house of his usual abode in the city of Spokane aforesaid, and on the day aforesaid, by then and there delivering to and leaving with one Katherine Allen, the wife of said John R. Allen, she being a person of suitable age and discretion then resident in said house a copy of said summons and a copy of said complaint, said copies being certified by Binkley & Taylor aforesaid to be such copies.

"That he effected such service on the defendant A. M. Cannon at the house of his usual abode in the city of Spokane aforesaid, and cn the day aforesaid, by then and there delivering to and leaving with one Eleanor B. Cannon, the

wife of said A. M. Cannon, she being a person of suitable age and discretion then resident in said house."

The words "a copy of said summons and a copy of said complaint, said copies being certified by Binkley & Taylor, aforesaid, to be such copies," are omitted from the concluding part of the paragraph in which he states the manner in which service was effected on Eleanor B. Cannon for A. M. Cannon. At the beginning of the affidavit, however, it is stated, just as in 9,001 and 9,012, that "he served the annexed summons and the complaint in the above entitled action on the defendants    .   .   .    A. M. Cannon,    .   .   .    on the 23d day of January, 1895, all in the city of Spokane, state of Washington." In addition to the return of service by O. R. McDonald, there is attached to the summons in 9,001 the following:

"State of Washington, County of Spokane, ss.

I, ——————, sheriff of Spokane county, state of Washington, do hereby certify that I have used due diligence to make personal service of the within summons and the complaint in this action on the defendants    .   .   . A. M. Cannon,    .   .   .    according to law, but have been unable to do so for the reason that none of said above named defendants can be found in my county; and from the best information I can obtain I learn that said    .   .   .    A. M. Cannon is at present residing in the city of New York and state of New York,    .   .   .   . Wherefore I return all of said above named defendants not found.

Dated this 11th day of January, A. D. 1895.

F. K. Pugh,
Sheriff of Spokane County, Wash."

This summons, with the return attached, was filed March 29, 1895. The same return, certified by the sheriff in place of his deputy, and dated the 12th of January, 1895, and filed March 25, 1895, is made in 9,012. In

9,046 there is no return by the sheriff as to A. M. Cannon. There is a return by the sheriff as to two other defendants that they were not to be found, and stating their place of residence as in Missoula, Montana, and San Francisco, California, respectively. The decree in 9,001 recites that the cause came on for trial on the 27th of March, 1895, and further recites:

"And the court having heard all the evidence and proofs produced herein, and duly considered the same, and the pleadings and all other papers in the cause, and being fully advised in the premises; and it appearing therefrom to the satisfaction of the court:—That each and all of the defendants above named have been duly summoned to appear and answer unto plaintiff's complaint herein," etc.

The decree in 9,012 recites that the cause came on for trial on the 23d of March, 1895, and further recites:

"That the defendants A. M. Cannon . . . were each and all regularly and personally served with summons and the complaint in this action within the county of Spokane, state of Washington, more than twenty-one days prior hereto," etc.

The decree in 9,046 recites that the cause came on for trial on the 30th of March, 1895, and further recites:

"And the court having heard all the evidence and proofs produced herein, and duly considered the same, and the pleadings and all other papers in the cause, and being fully advised in the premises; and it appearing therefrom to the satisfaction of the court;

That each and every of the above named defendants have been duly summoned to appear and answer unto plaintiff's complaint herein, but have each and all wholly failed to in any way appear, although the time allowed by law for them to so appear and defend this action has long since expired, and that the default of said defendants in the premises and each of them, has been duly and regularly entered according to law."

The act relative to the commencement of civil actions in force at the time the foreclosure suits were brought provides:

"Sec. 5.   A copy of the complaint must be served upon the defendant with the summons unless the complaint itself be filed in the office of the clerk of the superior court of the county in which the action is commenced within five days after service of such summons, in which case the service of the copy may be omitted; but the summons in such case must notify the defendant that the complaint will be filed with the clerk of said court;   .    .    .

"Sec. 6.   In all cases, except when service is made by publication, as hereinafter provided, the summons shall be served by the sheriff of the county wherein the service is made or by his deputy, or by any person over twenty-one years of age, who is competent to be a witness in the action, other than the plaintiff.

"Sec. 7.   The summons shall be served by delivering a copy thereof, as follows:   .    .    .   (12) In all other cases, to the defendant personally, or by leaving a copy of the summons at the house of his usual abode with some person of suitable age and discretion then resident therein. Service made in the modes provided in this section shall be taken and held to be personal service."

"Sec. 9.   When the defendant cannot be found within the state, of which the return of the sheriff of the county in which the action is brought, that the defendant can not be found in the county, is *prima facie* evidence, and upon the filing of an affidavit of the plaintiff, his agent or attorney, with the clerk of the court, stating that he believes that the defendant is not a resident of the state, or can not be found therein, and that he has deposited a copy of the summons and complaint in the postoffice, directed to the defendant at his place of residence, unless it is stated in the affidavit that such residence is not known to the affiant, and stating the existence of one of the cases hereinafter specified, the service may be made by publication of the summons, by the plaintiff or his attorney in either of the following cases:   .    .    .   (6) When the action is to fore-

close, satisfy, or redeem from a mortgage, or to enforce a lien of any kind on real estate in the county where the action is brought, or satisfy or redeem from the same.    .    .    ."

"Sec. 14.    Proof of service shall be as follows:    (1) If served by the sheriff or his deputy, the return of such sheriff or his deputy indorsed upon or attached to the summons; (2) if by any other person, his affidavit thereof indorsed upon or attached to the summons;    .    .    .    In case of service otherwise than by publication, the return, admission or affidavit must state the time, place and manner of service."    Session Laws, 1893, p. 407 (Bal. Code, §§ 4873-4875, 4877, 4882.

It will be seen that under § 6, *supra*, O. R. McDonald was as competent to serve the process in the foreclosure suits as was the sheriff of the county.    It is true that, under § 9, *supra*, the return of the sheriff of the county that the defendant could not be found in the county is *prima facie* sufficient to warrant the filing of an affidavit upon which to obtain a publication of summons.    We do not think, however, that this return of the sheriff overthrew the affidavit of O. R. McDonald to the effect that service was made at the house of the usual abode of the defendant Cannon, and that he had a usual abode in Spokane at the time the service was made.    The return of the sheriff as to the residence of the defendant Cannon is not conclusive, not even *prima facie*, because the statute does not require the sheriff's return to set forth the residence of the defendant, and ordinarily he could only know it from mere hearsay.    It simply requires him to return that the defendant "cannot be found" in the county.    In other words, the sheriff, by this return, says: "I cannot find the defendant in my county.    I cannot find the defendant's usual abode in my county."    The law then presumes that he has no abode in the county, and is not in the county.

This is not, however, a conclusive presumption, and it does not establish conclusively that the defendant is not to be found in the county, or that he has not a house of usual abode in the county. If the facts appear, as in this case, by the affidavit of some one else authorized to make the service, that he has a house of usual abode in the county, or was personally served in the county, it in effect overthrows the presumption arising from the sheriff's return.

We cited with approval in *Krutz v. Isaacs,* 25 Wash. 566 (66 Pac. 141), the case of *Bond v. Wilson,* 8 Kan. 228 (12 Am. Rep. 466), where the court says:

"We find upon examination that the courts have generally held the sheriff's return on *mesne* and *final* process conclusive between the parties and privies, though this is by no means a rule of universal application; but that in cases of *original process* there has been a general disposition to let in the truth. . . . we know of no statute that makes a sheriff a final and exclusive judge of where a man's residence is, or what is the age of a minor, or who are the officers of a corporation, or where their place of business is; and when the statute made it the duty of the sheriff to ascertain these facts it did not make his return of such facts *conclusive.*"

In case 9,046 the proof of service, under § 14, *supra,* is defective, inasmuch as the affiant fails to state how the service was made on Eleanor B. Cannon, as by delivering to her a copy, etc., and merely states the affiant's conclusions. This affidavit, if directly attacked, as to the proof of service, by motion in the original proceedings, would be insufficient. The law provides how the service shall be made. §§ 5 and 7, *supra.* The presumption, in view of this affidavit, stating, as it does, the conclusions of the affiant, is that he served it as the law provides. The court, without requiring an amendment of this return, found that personal service had been made. There is noth-

ing in the record or affidavit to overcome the presumption that such service was not made, or that contradicts such service. If, as a matter of fact, such service was made, the judgment is not void; it is but irregularly entered for want of the specific proof of service the law requires. The evidence disclosed by the affidavit in 9,046 was that the affiant served the summons and complaint. True, this statement is a mere conclusion, but the court accepted it as a fact, and equity will not interfere with a judgment on account of such alleged irregularity. 2 Freeman, Judgments, § 487. The person who made this service was called as a witness on the trial of this cause, and testified that he served the summons and complaint by delivering true copies thereof to Eleanor B. Cannon at the place of abode of A. M. Cannon in the Clough house on Riverside avenue in Spokane, Washington. This testimony supplies the specific manner of service, the omission of which was a mere oversight in preparing the return.

The next criticism of the appellant is that the return of service shows that the summons was left "at the house of his usual abode *in the city of Spokane.*" Does the addition of the words "in the city of Spokane" import that he had another residence? We do not think it does. This return means simply that the summons was left at the house of his usual abode, and that this house was in the city of Spokane.

The question decisive of this controversy is, at the time of service, did A. M. Cannon have a house of usual abode in the city of Spokane, and was he served there? If he resided in Spokane, he resided with his wife and family in the Clough house in the city of Spokane, and he had no residence or usual place of abode elsewhere. The service of process, if made at all, was made at that place on Eleanor B. Cannon, under § 7, Laws 1893, *supra.* We are

satisfied that the place where the service was made was the residence and house of usual abode of A. M. Cannon at the time the service was made. The evidence in this case shows that A. M. Cannon was not in the state of Washington after January 1, 1895. When did he cease to have a house of usual abode in Spokane, is one of the material inquiries. The affidavits of service and the recitals in the decrees of due service, based upon proof and evidence, and also the papers in the case as stated in the decrees, should not be set aside unless the proof of the falsity thereof is clear and convincing. *Johnson v. Gregory & Co.,* 4 Wash. 109 (28 Pac. 831, 31 Am. St. Rep. 907). There is not a particle of evidence in this case showing that O. R. McDonald was interested in making a false return, or that he was other than an absolutely disinterested person. He was a man sixty years of age. He had served in the sheriff's office four years. He had been a deputy constable for four years. It had been a part of his business for six out of the past sixteen years to serve papers. He knew Eleanor B. Cannon by sight. There is a strong presumption that the return correctly stated what he did as to the service. *Ketchum v. White,* 72 Iowa, 193 (33 N. W. 627).

It is admitted that at the times in question A. M. Cannon was in bad health. F. C. Goodin, a witness for appellant, testified that Cannon told him, in December, 1894, that he would join him on a sea voyage for his health to South America. Goodin, who was a resident of Spokane, contemplated this trip for his own health. He went east ahead of Cannon, about December 24th, on account of his railroad pass expiring on the 31st of the month. Cannon met him in New York on January 6th or 7th; Cannon stopped at the Victoria Hotel until they sailed, somewhere between the 15th and 25th of that month. Cannon did

not take up any residence in New York for the month of January, but was simply stopping at the hotel waiting for the ship to sail. Summons in case 9,001 was served on January 10th, three or four days after Cannon arrived in New York. In case 9,012 the summons was served on January 12th. In case 9,046 the summons was served on January 22d. It is impossible to state with any certainty whether Cannon was in New York or on the high seas when the summons in the last two cases were served. Cannon and Goodin got back from their sea voyage about March 10th. Cannon had come to no conclusion on the subject of business in January, 1895, nor in fact until after he returned from the sea voyage. Goodin says: "His friends were insisting on his remaining in New York, instead of seeking another location outside; although he did not make up his mind to do anything until after he returned from South America, when he decided to remain in New York." The relations between Cannon and his wife were friendly and harmonious. Eleanor B. Cannon, the wife he married after the death of Jennie F. Cannon, testified that she and Cannon lived in the old Cannon house for a time, and until some time in December, 1894, and then went to reside in the Clough house, on Riverside avenue, which she rented, and she lived there until after Cannon's death in April, 1895. Cannon lived there until he went east, and their relations were perfectly harmonious; and that when Cannon left he had in mind Rio Janeiro as a good place in which to make money. She says he was going away to go in business. "Question: Where? Answer. He had not quite decided, when he left, on the absolute point of location. He had two points in view. . . . Q. What arrangement was there between you and Mr. Cannon about his coming for you or about you following him? A. His original intention was

to send for me, and afterwards he changed that. He was to meet me in St. Paul, on account of the children. It was hard to travel with them." E. D. Sanders, another of defendant's witnesses, testified that in January, 1895, Cannon was in very bad health, and that he knew that Cannon was thinking of taking a trip to South America for his health, and that Goodin was going with him. A. R. Cannon, a brother of A. M. Cannon, and a witness for respondent, testified that he had lived in Spokane seventeen years; that A. M. Cannon told him before he left that he and Goodin were going to take a sea trip to South America; that he said that he was not going away to locate, but was going for his health; that he was not going to leave permanently; that he would be back in Spokane, and that he was going to leave his wife in Spokane; that he expected to come back and live in Spokane, and expected to live and die there; that he was buried in Spokane; that he never said anything to him that indicated that he had any intention of changing his residence or place of abode; that before he considered the matter of business or making money anywhere he must get his health back, and that he was taking this trip for his health; that he, the witness, was present at the sale which took place in the large old Cannon house, which was the separate property of Jennie F. Cannon; that Cannon said that they were going to keep some of the furniture; that he would not sell the silverware, nor the books, nor the bookcases, nor some of the other furniture; that after Cannon and his last wife (Eleanor) had moved into their new place of residence on Riverside avenue, the witness was there; that they were keeping house there; that he saw the old books and the library, and the chairs, he was under the impression, were some from the old place; that Cannon had been in the habit of going to New York once or twice a year, and had done more or less

business in New York of a banking and railroad character
during all of these years that he had resided in Spokane.
J. W. Binkley, who was a friend of Cannon, and in his
confidence, and whom Cannon named as one of his execu-
tors, testified that at the time these foreclosure actions
were commenced Binkley & Taylor were the agents and
attorneys of the plaintiff, and that now they have no inter-
est in or connection with the plaintiff; that he had a talk
with Cannon and Houghton about these mortgages and the
foreclosure thereof a short time before January 1, 1895;
that they had given Cannon and Houghton every oppor-
tunity to raise the money to pay off the mortgages, and
that Cannon realized that it could not be done, and there
was nothing left but foreclosure proceedings, and that he
had told him that these actions would be commenced right
away; that Cannon never said anything to him on the sub-
ject of changing his residence or abode or domicile; that
he understood that Cannon was taking a trip for his
health, and had no other suspicion on that subject; that no
attempt was made to deceive, or defraud, or mislead any
one in the service of process in these cases, and that the
Hypotheek bank acted at all times in good faith in the
matter.    J. R. Taylor testified that neither Cannon nor
any one else ever suggested to him that Cannon was going
away, or was thinking of changing his residence, domicile,
or abode; that the service of process was made in good
faith, and without any intention to mislead, deceive or
defraud any one, and that the plaintiff acted in good
faith in the matter at all times.    The return of service,
either by a sheriff or by a disinterested person authorized
by law to make it, is *prima facie* evidence of the material
facts recited therein, and a court of equity should not set
aside a judgment except upon clear, satisfactory, and con-
vincing proof of lack of service of process by the person

making it. *Huntington v. Crouter,* 33 Ore. 408 (54 Pac. 208, 72 Am. St. Rep. 726). The case just cited refers to the return of an officer, but there is no real distinction between the return of an officer and that of a person authorized to make the service. The sanctity of an official oath is no greater than the sanctity of the affidavit of service made by a disinterested person.

"The law assumes that every man must have a domicile, or place of last and usual abode, within the state or out of it." *Ames v. Winsor,* 19 Pick. 247.

The evidence discloses that A. M. Cannon had been one of the most prominent citizens of Spokane from the very beginning. If there was any one who could have been said to have a residence, domicile, or abiding place in that city it was he. He and his wife were living in perfect harmony in a house with their goods, chattels, and effects. He packed his trunk in that house and started away on January 1, 1895, to meet an old friend, Mr. Goodin, in the city of New York, to book passage upon a steamship for a trip to South America for his health. He knew before he left that these actions would be commenced at once. He had given up the idea of being able to pay the mortgages. The first summons was served nine days after he left Spokane, the second ten days, and the third twenty-one days. The policy of the law is to require the plaintiff to give the defendant the best service possible under the circumstances, and a proper construction of the whole statute relating to service forbids service by publication when the defendant is known to have a place of residence in the state, and there can be found in such place of residence a person of suitable age and discretion to whom a copy of the summons can be personally delivered. A person may be out of the state on business or pleasure, and still have his *usual* place of abode in the state, and service may be made

there. *Blodgett v. Utley,* 4 Neb. 25; *Love v. Cherry,* 24 Iowa, 204; *Lee v. MacFee,* 45 Minn. 33 (47 N. W. 309).

This statute providing for service at his usual abode was not made exclusively for the benefit and protection of defendants, but was made also for the benefit and protection of parties who have just claims, so that residents of the state could not depart therefrom and defeat their creditors. It was not intended that judgments obtained by creditors when the defendant was out of the state, leaving a wife and family at his last residence in the state, could be affected merely by the debtor's expression of intention to his wife or some intimate friend. If process is served at such residence as provided by subdivision 12, § 7, *supra,* the defendant being out of the state, a judgment should not be set aside merely upon proof of statements made by the debtor to his wife or to intimate friends that he expected to locate in business elsewhere, and not to return. On the contrary, the creditor should be protected by the outward evidences, such as the fact that the wife and the family of the debtor continued to reside in his usual place of residence, and that he had been absent from home only a short time; and the creditor should not be subjected to the uncertain dangers and hazards of the testimony of the wife or close friends of the debtor as to his secret intentions. We think the evidence in this case shows that A. M. Cannon was domiciled in Spokane, and that the house of his usual place of abode was where the service was made. This was his fixed home. Under the facts in this case the presumption is that it remained the house of his usual abode, because it appears that he did not determine finally to locate in New York until the return from his sea voyage, and until after the return of the service in all three of the foreclosure suits. An abode once acquired is presumed to continue until it is shown to have been

changed by. acquiring another *permanent* abode. Where a change is alleged, the burden of proof rests upon the person asserting the change. *Mitchell v. United States,* 21 Wall. 350. In the case of a married man the house of his usual abode is the house wherein his wife and family reside. In *Powell v. Nolan,* 27 Wash. 318 (67 Pac. 712), we said:

"But we do not understand the rule, as to presumptions in a direct attack upon the judgment, to go so far as to hold that facts may not be inferred from other facts appearing in the record. The service in this case shows that Susie A. Nolan was in the city of Spokane at the time of the service at the usual place of residence of James Nolan, that she was the wife of James Nolan, and that she was served at the residence of James Nolan. From these facts it is right to presume that she resided with her husband in his place of residence, for the law presumes that the wife's domicile and place of residence are the same as the husband's, and it may be further presumed that the residence of the husband was the house of his usual abode."

See, also, *Missouri, etc., Trust Co. v. Norris,* 61 Minn. 256 (63 N. W. 634); *Second National Bank v. Gardner,* 171 Pa. St. 267 (33 Atl. 188); *DuVal v. Johnson,* 39 Ark. 182.

We next inquire, is the return of O. R. McDonald as to service on Eleanor B. Cannon for A. M. Cannon false? Eleanor B. Cannon testified that no papers, summons, or complaint in the three foreclosure actions were served upon her. She further testified that between the 8th of January and the 23d of January, 1895, she was in Helena, Montana, and that she returned to Spokane about the 5th or 6th of February, 1895; that she tried to refresh her recollection from papers so as to locate the time she was in Helena; that she went to Helena to see her mother and sister; that she fixed the date partially from some checks

she gave while in Helena; that she went to make a loan from a friend for Mr. Cannon; that she did not take her children with her, but left them with a nurse in the Clough house, on Riverside avenue, where she was living when Mr. Cannon left to go to New York; that the oldest of the three children was ten years old at the time; that they were her children by a former marriage. We do not think that this evidence in itself is convincing enough to overthrow the return of O. R. McDonald. We think Eleanor B. Cannon was mistaken as to the time she was in Helena, and that her memory was defective as to the service. Her mother, her sister, the friend she intended to borrow money from, the nurse she left with the children, or some one whom she met while away, should have been called by appellants to substantiate her statements. The checks, even, with which she refreshed her memory, were not produced on the trial. There was not a scintilla of evidence of any collusion between O. R. McDonald and the plaintiff in the foreclosure suits, or its agents or attorneys, by which McDonald was induced to make a false return. The return was sworn to a few days after the service was made. The matter was fresh in the mind of McDonald. Besides, he was called as a witness, and cross-examined at length. His testimony appears to be fair and impartial. He testifies to the service of copies of the summons and complaint in all three actions on Eleanor B. Cannon, at the Clough house, on Riverside avenue, Spokane, at the time mentioned in his return.

The judgment of the court below is affirmed.

REAVIS, C. J., and ANDERS, HADLEY, MOUNT and DUNBAR, JJ., concur.

FULLERTON, J., concurs in the result.