Rebecca L. ROSA, as Personal Representative of Michael Rosa, Deceased, Plaintiff-Appellant/Cross-Appellee.

v.

Ed CANTRELL,
Defendant-Appellee/Cross-Appellant

and

Matt BIDER, James Callas, and the City of Rock Springs, Defendants-Appellees.

Nos. 81–1487, 81–1504.

United States Court of Appeals,
Tenth Circuit.

Dec. 10, 1982.

George A. Zunker, Urbigkit & Whitehead, Cheyenne, Wyo., for plaintiff-appellant/cross-appellee.

Glenn Parker, Hirst & Applegate, Cheyenne, Wyo. (James L. Applegate and Harold Frederick Buck, Hirst & Applegate, Cheyenne, Wyo., with him on the brief), for defendant-appellee The City of Rock Springs.

Eugene S. Hames, Wood, Ris & Hames, Denver, Colo. (William K. Ris, Wood, Ris & Hames, Denver, Colo., and James E. Fitzgerald, Cheyenne, Wyo., with him on the brief), for defendant-appellee/cross-appellant.

Before SETH, Chief Judge, DOYLE, Circuit Judge, and BOHANON, Senior District Judge.*

WILLIAM E. DOYLE, Circuit Judge.

This is a homicide case brought by the wife of the victim of the homicide, one Michael Rosa who was shot and killed by the defendant Cantrell on July 15, 1978. It was alleged that this was just two days before Rosa was to have appeared before a grand jury which had been empaneled by the State to investigate alleged corruption in Rock Springs. At the time Cantrell was employed by the City of Rock Springs, Wyoming as the Public Safety Director. The victim was an undercover agent who worked for the City and was under the supervision of Cantrell. The plaintiff Rebecca Rosa brought the action on July 14, 1980 in the United States District Court for the District of Wyoming. Her status was that of personal representative of her deceased husband. Count One was based on Wyoming's wrongful death statute, W.S.

§ 1–38–101, whereas Count Two alleged a cause of action arising under federal law, 42 U.S.C. § 1983. Named as defendants in this latter suit were Cantrell and the City of Rock Springs, Wyoming.

The principle issue in the case is whether the trial court erred in dismissing the wrongful death action. The court's conclusion was that the statute of limitations had run, a conclusion which was reached despite the fact that Cantrell had not been available for the service of summons during the period following the filing.

From the date of the filing the sheriff's office made an effort to locate Cantrell but he was not to be found. Finally on July 29, 1980, some two years following the incident, an alias summons was issued for Cantrell and service was attempted upon him in Douglas, Wyoming. This was unsuccessful. On August 14, 1980 a second alias summons was issued for Cantrell and was delivered to the U.S. Marshal in Sweetwater County, Wyoming. This summons, along with the complaint, was left with Cantrell's wife at their home in Rock Springs. The return of the Marshal stated that on September 4, 1980 he had served a copy of the summons and complaint with a person of suitable age residing in the defendant's usual place of abode (in Rock Springs). Mrs. Cantrell held the complaint and summons for two weeks during which time she neither reported to the marshal nor did anything. After the two weeks had passed she notified Rosa's counsel that Ed Cantrell had not been at that address and had not received the service. She further stated she did not know his whereabouts. However, personal service was ultimately made on Cantrell in Fall River County, South Dakota, on October 17, 1980.

Cantrell's counsel filed a motion to quash service and to dismiss the complaint against him on the ground that the statute of limitations had run. This contention was made notwithstanding the fact that he had not

---

* Honorable Luther L. Bohanon, Senior District Judge, District of Oklahoma, sitting by designa-

tion.

been present within the county in which the homicide occurred during the period following the filing of the complaint and the issuance of the summons.

The trial court dismissed the wrongful death claim against Cantrell on February 26, 1981. The judge found that this Count was barred by the statute of limitations, § 1–38–102(d) and Rule 3(b) of the Wyoming Rules of Civil Procedure. This latter Rule requires that the complaint be served within 60 days from the date of the filing of the complaint. If there is a failure to make this service within 60 days, then the action is deemed commenced on the date of service. The trial court also found that the attempted service on Cantrell on September 4, 1980 was void inasmuch as the place where the summons was left was not his usual place of abode.

The trial court also granted the motion of the City of Rock Springs to dismiss the § 1983 claim based upon the fact that the cause of action was said to have arisen July 15, 1978, and therefore the doctrine of sovereign immunity was in effect then. The court relied on the Wyoming case of *Oroz v. Board of County Commissioners of Carbon County,* 575 P.2d 1155 (Wyo.1978).

The court denied Cantrell's motion to dismiss the civil rights claim against him. It found here that the claim raised a federal question which was controlled by the Federal Rules of Civil Procedure; that this complaint was properly filed within the two year statute of limitations as provided by Wyoming law on July 14, 1980, just one day short of the two year period. A final judgment which was entered March 28, 1981 dismissed the wrongful death claim against him and also the civil rights claim as against the City of Rock Springs.

The contentions on appeal are that:

1. The trial court erred in dismissing the wrongful death claim against Cantrell as being barred by the statute of limitations;

2. The court erred in refusing to apply the Wyoming Savings Clause § 1–3–118 of the Wyoming statutes. This, as we will presently see, will allow the plaintiff to refile the complaint;

3. The court erred in refusing to uphold the service based upon the tolling of the statute of limitations;

4. The court erred in ruling that the City of Rock Springs was immune from suit under § 1983;

5. That if the City is not immune, nevertheless the dismissal of the § 1983 claim ought to be affirmed because of the state law defenses of payment and/or failure to file notice of a claim with the City;

6. That the court erred in determining that the § 1983 claim against Cantrell should not be dismissed as being barred by the Wyoming statute of limitations;

7. That the personal representative of the decedent had standing to bring this § 1983 claim on her behalf or on behalf of the descendants of the decedent.

I.

THE CONTENTION THAT THE ACTION COMMENCED IN ACCORDANCE WITH RULE 3 OF THE APPLICABLE FEDERAL RULE OF PROCEDURE

The argument of appellant is that the Supreme Court's decision in *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), applies to this case. In *Hanna* the Supreme Court held that in a diversity case service is governed by the Federal Rules of Civil Procedure, rather than those of the state. But this conflict between the *Hanna v. Plumer* decision and that in *Ragan v. Merchants Transfer and Warehouse Co.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949) has been settled by the Supreme Court in *Walker v. Armco Steel Corporation,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). There is no rationale which supports the contention that *Hanna v. Plumer* is applicable. The decision in *Walker* clearly dictates that the Wyoming Rules of Civil Procedure are to be applied in this diversity action.

This conclusion does not, however, end the matter. Even accepting the fact that the doctrine of *Walker v. Armco Steel Cor-*

*poration,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980) governs this issue, we nevertheless are of the opinion that under all of the facts and circumstances here that personal jurisdiction over the defendant has been established; and that the service made at the defendant's home was effective; that the Wyoming Savings statute § 1–3–118 furnishes an alternative basis for obtaining jurisdiction over the defendant Cantrell.

## II.

Do the facts and law establish the validity of the service of process based upon the delivery of the complaint and summons to Mrs. Cantrell on September 4, 1980? Was this his home in Rock Springs, Wyoming, or was the service valid by reason of the tolling of limitations statute W.S. Section 1–3–116? This nullifies the running of limitations during abscondence, absence or concealment. The alternative issue is whether, as a result of the absence, abscondence or concealment by the defendant, the statute was tolled. We further consider whether the Wyoming savings statute is applicable.

The Wyoming Savings statute § 1–3–118 was also designed for situations like this where the plaintiff files the action in a timely manner and makes a diligent good faith effort to serve the defendant but is unable to complete service within the sixty day time period through no fault of his own. The various attempts at service dispel any notion of lack of good faith. This statute provides:

> If in an action commenced in due time, a judgment for the plaintiff is reversed, or if the plaintiff fails otherwise than upon the merits and the time limited for the commencement of the action has expired at the date of the reversal or failure, the plaintiff, or his representatives if he dies and if the cause of action survives, may commence a new action within one (1) year after the date of the failure or reversal. This provision also applies to any claim asserted in any pleading by a defendant.

DO THE FACTS AND LAW ESTABLISH THAT SERVICE WAS VALID; THAT THE ACTION HAD COMMENCED WITHIN THE PROVISIONS OF WYOMING LAW?

We here address the issues as to whether the circumstances establish, first, the validity of the service on Sept. 4 as a result of delivery of the summons and complaint at his usual place of abode; or, in the alternative, as a result of absconding or leaving the state or concealment, does the Wyoming tolling statute § 1–3–116 apply so as to extend the period within which service could be made. A further alternative is whether the Wyoming saving statute is applicable.

The law having to do with this is basically procedural and does not go to liability from the standpoint of the merits. It is because these two points are interrelated that we take them up together.

There are several Wyoming statutes which come into play here and the first of these is the statute of limitations applicable to wrongful death. This is § 1–38–102(d) of the Wyoming Code of Civil Procedure. It states in essence that every action shall be commenced within two years after the death of the deceased person.

In order to apply the two year period it is necessary to consider a rule of civil procedure, Rule 3(b), which defines the phrase "commencement of action" which is mentioned in the limitations statute. It declares:

> For purposes of statutes of limitation, an action shall be deemed commenced on the date of filing the complaint as to each defendant, if service is made on him or on a co-defendant who is a joint contractor or otherwise united in interest with him, within sixty (60) days after the filing of the complaint. If such service is not made within sixty (60) days the action shall be deemed commenced on the date when service is made. The voluntary waiver, acceptance or acknowledgment of service, or appearance by a defendant shall be the same as personal service on the date when such waiver, acceptance,

acknowledgment or appearance is made....

Also essential is Rule 4(d) of the Wyoming Civil Procedure which provides that service can be made by "... leaving copies at his dwelling house or usual place of abode with some member of his family ...."

The so-called savings provision § 1–3–118 is quoted above. It is in general effect an extension of the two year statute and offers a possible answer to the service of process challenge. It will be considered hereafter. It is a provision which offers relief in a situation in which the period of the statute of limitations has run.

\* \* \*

■ We address ourselves first to the question whether the delivery by James Brody, Deputy United States Marshal, of the summons and complaint upon Norma Cantrell, the wife of the defendant, was valid. Mr. Brody said "Mrs. Cantrell advised me that although she had not seen Mr. Cantrell for some time, he still called to talk to their son, Joe." Brody further said:

> I advised her to advise Mr. Cantrell, when he called, that I had served a complaint and summons upon him. I, thereafter, completed the return of service and forwarded it to the Clerk of the United States District Court for the District of Wyoming in the good faith belief that Mrs. Cantrell knew the whereabouts of Mr. Cantrell, that she had contact with him, and that she could advise him that I had served him by leaving the copy of the complaint with her."

The circumstances here support the conclusion that Mr. Cantrell was indeed concealing himself during this period of time. He disappeared from Rock Springs very suddenly and thus was able to avoid the delivery of the complaint and summons to him personally. He was finally personally served on October 17, 1980 in South Dakota but this was 30 days after the time had run. But meanwhile timely service had been made on Sept. 4, 1980 when the documents were delivered to his wife at his dwelling house or usual place of abode. The statute of limitations then does not apply. As we

view it the service at his place of abode was valid. In law the residence in Rock Springs, Wyoming was his place of abode. Also as a result of the tolling statute the Oct. 17th, 1980 service just referred to which occurred in South Dakota was within the period. This was not a situation in which the one effort was made to serve the process and thereafter nothing happened. There was in truth a good faith effort on the part of the plaintiff and the people acting on her behalf to notify the defendant that the suit had been filed.

■ We are aware that the burden is on the plaintiff to prove the absence of the defendant or to prove that he had absconded in order to conceal himself. But the record clearly shows that he departed at the critical time and was concealed, presumably in South Dakota. He was in communication with his family at this time by phone. According to the tolling statute the limitations statute is stayed while he is absent from the state, has absconded or was secreted. From all appearances he had absconded from Wyoming when it was considered that the sheriff made several efforts to find him and serve him. An attempt was first made to find and serve Cantrell in Converse County, Wyoming on August 8, 1980. The sheriff was unable to locate him there. An attempt was then made to serve Cantrell at 938 Truman in Rock Springs, his last known place of residence. This was unsuccessful. Service was completed on September 4, 1980 by leaving a copy with the defendant's wife at 938 Truman. This service was later quashed by the district court. Finally personal service was made on the defendant successfully on October 17, 1980 in Fall River County, South Dakota. Two weeks after the summons and complaint had been left with her, Mrs. Cantrell returned them to Rosa's attorney saying that she did not know the whereabouts of Mr. Cantrell. By that time, which was around September 18th, the sixty day period which was allowed for service had run out. At the time of this service Mrs. Cantrell had advised Mr. James Brody, the Deputy United States Marshal, that although she had not seen Mr.

Cantrell for some time, he still called to talk to their son, Joe. Brody advised her to advise Mr. Cantrell when he called that service of the complaint and summons upon him had been carried out. He then completed the return believing that the service was completed. Mrs. Cantrell did not report the fact that she didn't know where he was until two weeks later. It is our opinion that this did not render the service void or even voidable. At the time this was indeed his usual place of abode. The existence of another abode has not been brought to anybody's attention in this case. This was service.

What is the meaning of "usual place of abode"? In the Federal Procedure Lawyers' Edition the abode service is discussed at some length. See § 65:68, and paragraph 65:69, Abode Service. This recognizes and authorizes the service of process on an individual by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion and residing therein. The text declares:

> Abode service is an alternative to personal service, and if this method of service is utilized, it is not necessary to show that the papers were served on a defendant personally or that the papers were delivered to the defendant by the person with whom they were left. However, under some circumstances a default judgment may be set aside for excusable neglect, mistake of fact, and inadvertence where the person served did not turn over the papers to the defendant.

The meaning of abode is stated in § 65:70:

> Generally speaking a person's usual place of abode is the place where he is actually living, except for temporary absences, at the time service is made. There is no hard and fast rule, and a determination of abode may require a practical inquiry as to where the defendant is actually living, and a review of the facts of the particular case. The inquiry is similar to that required in determining a person's domicile, although it has been held that a

person may be a citizen of one place and have his usual place of abode in another.

Section 65:71 declares that:

> Generally speaking, a person only has one abode. Service may be made on a traveling defendant by leaving the papers at a place he has recognized as his legal residence, so long as he receives actual notice, even though his vocation takes him to other places on a regular basis and he only returns to the place where process was delivered when he has the opportunity.

It is further said:

> A person in the process of moving may be served at his former address, *where members of his family still reside, until he establishes a new abode elsewhere.* (emphasis supplied).

An annotation in 32 A.L.R. 3rd takes up the meaning of "usual place of abode". At page 119 of 32 A.L.R. 3rd the authors state:

> In general, if a person has an established home, *particularly a place at which his family resides, a mere absence,* even of considerable duration, does not destroy the established place as a usual place of abode, residence, or domicile, if the person has an intention of returning. If a person leaves an established place with his family, a more difficult question arises. (emphasis supplied)

At page 140, 141 of 32 A.L.R. 3rd the authors consider the particular place from which the person was absent as being a family home where process was left. A number of cases are collected here which deal with the exact problem here, that is to say the contention that the place of dwelling or abode no longer exists due to absence or departure. The cases interpreting "dwelling house or place of abode" at the time of the attempted service within the meaning of the statutes or rules of court, have found that "service under such circumstances has been upheld at least where the person, if a married man, maintained his family at the place from which he was absent, or, if a young, unmarried person, maintained close relations with his parents at such place." It is also stated:

Thus, the fact that a defendant left his home for an extended period and traveled a considerable distance has been held not to have destroyed his original home as his 'usual place of abode', if he did not intend to change his residence, *as evidenced by his leaving his family behind,* and his subsequent return. (emphasis supplied)...

In *Shephard v. Hopson,* 191 Ark. 284, 86 S.W.2d 30 (1935), service was held properly made upon a wife remaining at home, notwithstanding testimony by the husband that he had left home, had separated from his wife, had moved to another state, and after securing a divorce, had continued to live elsewhere, where it appeared that a divorce had in fact not been obtained until a year after service was made, defendant had in fact been within the state conferring with attorneys at the time, and neither husband nor wife had indicated at the time of service that they had separated, the court thus finding that the intention of abandoning the former home had not developed at the time service was made on the wife.

That *Shephard* case is very similar in its facts to the case with which we are dealing. Other cases of a similar nature are *Capitol Light & Supply Co. v. Gunning Electric Co.,* 24 Conn.Supp. 324, 190 A.2d 495 (1963):

where the defendant, aged 28 and unmarried, lived with his parents in Connecticut for many years before taking employment elsewhere, and thereafter he continued to participate actively in the family business located in Connecticut, as an officer, stockholder and employee and made application for an operator's license to the Connecticut Department of Motor Vehicles 2 days before service was made upon him by leaving a copy of the process at the parents' dwelling.

After reviewing all of the circumstances the Connecticut court held that:

it was not unreasonable to believe that a young man 28 years of age, unmarried, would have, in view of the circumstances noted, a usual place of abode at the present home of his parents, there being

no showing that defendant had intended to abandon his former home.

The court also stated that:

A person could have two places of abode at the same time, each qualifying as a place at which substituted service of process could be effected.

Where a defendant left his usual place of abode for a few months to take a regular summer vacation at a prescribed place the regular, established place continued as his 'most notorious place of abode' during the vacation interval.

This was held in *Venable v. Long Realty Co.,* 46 Ga.App. 803, 169 S.E. 322 (1933). It was held that:

Where a bachelor lived with his sister at her residence during 8 or 9 months of each year, and moved with her to her summer home in another part of the county, living with her at this place during 3 or 4 of the summer months of each year, the former place constituted the usual residence and general lodging place of the person, and process could be served by leaving a copy at such former place, under a statute providing for the leaving of such process at defendant's 'most notorious place of abode'.

*See also Bank of South Carolina v. Simpson,* 27 SCL (2 McMull) 352 (1842) and *Lovin v. Hicks,* 116 Minn. 179, 133 N.W. 575 (1911),

Where defendant owner of a furniture business, who had lived with his wife on the second floor of the business building, went to another town to conduct a furniture business of which he was also proprietor, the place at which his wife continued to reside was defendant's 'house or usual abode' during the period of his absence (according to *Lovin v. Hicks*) where defendant voted there in elections taking place during his period of absence, the presumption that a married man's usual place of abode was where his wife resided not having been rebutted. To similar effect are Missouri, *K & T Trust Co. v. Norris,* 61 Minn. 256, 63 N.W. 634 and *Kueffner v. Gottfried,* 154 Minn. 70, 191 N.W. 271 (1922).

Similarly it has been held that where a husband left his family home without clear evidence of intention to establish a domicil elsewhere, other than an inference which might be drawn from the fact that he may have been seeking to avoid an action at law against him, the family home continued as the husband's dwelling house. In *Second National Bank v. Gardner,* 171 Pa. 267, 33 A. 188 (1895), an action by a bank against defendant cashier to recover funds allegedly wrongfully taken by the defendant, it was held that service by leaving process with the defendant's wife at his home was valid under a statute authorizing such service at defendant's dwelling house, even though it appeared that the defendant left his house to avoid defending the action brought against him, the court stating that although defendant had gone away, leaving his family in his residence, there was no evidence of his intention to acquire a new domicil and no evidence that he had acquired one, the only negation of intention to return being an inference from the circumstances, drawn by his wife, who nevertheless expressly admitted that she had no information from him on the subject.

This decision is also quite similar to the case at bar.

Where a defendant left his home to go on an extended ocean voyage to South America, ostensibly because of ill health, leaving his wife behind, service by leaving a copy of process with the wife was held valid in *Northwestern & P. Hypotheek Bank v. Ridpath,* 29 Wash. 687, 70 P. 139 (1902). This was under a statute authorizing substituted service by leaving a copy of process at defendant's house of usual abode, notwithstanding it appeared that defendant had entertained some thoughts of not returning, but the final decision to locate elsewhere was reached after the service of process had been made.

■ There are cases in the annotation which hold that the place from which the defendant departed was not his place of residence based upon a finding that the person did not intend to return which was supported by the evidence, notwithstanding that the person left his family or parents at the original place. But in the present case it is important to note that the defendant had not been gone for a long period of time and there was no basis for inferring that he had established a place of residence at some other place. He merely said that this was no longer his abode and that is not enough. It must be shown that there has been the establishing of a new abode and he has the burden of establishing this, according to the cases. The presence of his family in Rock Springs certainly carries a good deal of weight in that it supports a conclusion that the Truman Street house was his usual place of abode, particularly in view of the fact that he had been gone for such a short time and was very likely seeking to avoid service of process.

## WAS THE STATUTE TOLLED?

■ This case is factually similar to the Wyoming court's decision in *Tarter v. Insco,* 550 P.2d 905 (Wyo.1976). However, there the defendant could have been served by leaving a copy of the summons and complaint with the Secretary of State. The court said that her absence from the state did not toll the statute of limitations. The court's comments on the policy of the statute are pertinent:

There can be no reason for a tolling statute except where service is impossible or unusually difficult. It would be inequitable to allow a defendant to escape service through trickery or concealment. The need and reason for a tolling statute fails where there is another readily available method of service.

In the present case service was unusually difficult. It is a proper case for invoking the tolling statute. Section 1-3-116, Wyoming statutes, Absence from state or abscondence or concealment, states that the limitations provision does not begin to run until he comes back into the state and is tolled while he is absconded or concealed.

The defendant was either absent from the state, absconded, concealed or all three. In any case the statute of limitations did not run while he was absent, absconded or concealed.

The plaintiff has the burden of proof as to absence, but this fact has been proven. Unquestionably the defendant was missing during the time that the effort was being made to serve him. During that time the City of Rock Springs was served and the sheriff attempted to serve defendant on more than one occasion. The plaintiff's effort to locate him was conscientious and extensive but it was to no avail.

In sum we conclude that the Sept. 4, 1980 service was valid. Wyoming Rules of Civil Procedure provide that service can be made by handing the summons and complaint to the defendant personally or by leaving copies at his dwelling house or usual place of abode with some member of his family.

The summons and complaint was left at defendant's usual place of abode with some member of his family. He says that he was separated. There was however no legal separation on record. This was not a lie but it was a temporary expedient. The cases construe the term "usual place of abode" broadly. Even after the individual has departed it continues to be his usual place of abode. This is especially true where, as here, his wife and children continue to live there and he communicates with them at that place. His wife acknowledged that he called and talked to his son.

An implied abandonment would have to be proven by the defendant. No such evidence has been presented. From the evidence and law 938 Truman Street continued to be his "usual place of abode". The consequence is that service was completed on September 4, 1980, well within the statutory time. Hence the service was good.

The same result is reached when the tolling statute is applied. Here the question is whether Cantrell absconded, departed from the state or was secreted. We say that all three standards were satisfied. He was being sued for millions of dollars. A strong escape motive was present.

*Does the Wyoming saving statute or clause apply? Section 1-3-118, Wyoming Statutes.*

■ The statute in question is designed to provide relief where an action has been commenced in due time but a judgment for the plaintiff is reversed or the plaintiff fails otherwise than upon the merits and the time limit for the commencement of the action has expired at the date of the reversal or failure, the plaintiff, or his representatives if he dies and if the cause of action survives, may commence a new action within one (1) year after the date of the failure or reversal. This provision also applies to any claim asserted in any pleading by a defendant. So, what it does is provide the party with a one year period in which to refile the case after the dismissal of the case or its reversal. The argument of the appellant is that even if service upon Cantrell was insufficient, dismissal of the claim with prejudice would not be appropriate. Her argument is that the Wyoming saving statute described above would allow refiling within one year.

This type of statute is almost universally employed. Numerous states have adopted some species of this saving statute. Therefore there is a good deal of litigation which deals with it. This is not a new provision; it has been adopted by a good many states, including Wyoming, but also including New York. It is an equitable provision which seeks to give a litigant who has brought the suit in due time within the statute of limitations an opportunity to refile the case where he has failed through no particular fault of his own. The philosophy behind it is very well enunciated in *Gaines v. City of New York,* 215 N.Y. 533, 109 N.E. 594 (1915). The statute is very similar to that which is enforced in Wyoming. The opinion by Mr. Justice Cardozo gives a general description of the statute in 109 N.E. at 596 as follows:

That the plaintiff's case is within the letter of the statute is hardly doubtful. He brought an action against the defendant, and the action was terminated otherwise than by a voluntary discontinuance, a dismissal of the complaint for neglect to

prosecute, or a final judgment upon the merits. If the protection of the statute is to be denied to him, it ought to be clearly shown that his case, though within the letter of the statute, is not within its reason. We think that the defendant has been unable to sustain that burden. *The statute is designed to insure to the diligent suitor the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by a narrow construction.* The important consideration is that, by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts. When that has been done, a mistaken belief that the court has jurisdiction stands on the same plane as any other mistake of law. Questions of jurisdiction are often obscure and intricate. This very question of the power of the City Court to determine actions against the city of New York will illustrate the truth. *O'Connor v. City of New York,* 51 Misc.Rep. 560, 101 N.Y.Supp. 295; Id., 191 N.Y. 238, 83 N.E. 979. There is nothing in the reason of the rule that calls for a distinction between the consequences of error in respect of the jurisdiction of the court and the consequences of any other error in respect of a suitor's rights. (emphasis supplied)

There had been a failure of jurisdiction and that's why it was started over again and the court held that although the defendant argued that an action dismissed for want of jurisdiction was a nullity, that this is an extreme view and was inapplicable to the case. But the opinion explained that even where the jurisdiction fails the court has not lost all of its power to deal with the case. It is not dead. Mr. Justice Cardozo brought out that the statute, i.e. of limitations, was expanded though the earlier action was dismissed for lack of jurisdiction, either of the subject matter or of the person.

*Whether the Wyoming statute is applicable to a fact situation in which jurisdiction is involved?*

The 1905 decision of the Supreme Court of Wyoming in *Clause v. Columbia Savings & Loan Ass'n,* 16 Wyo. 450, 95 P. 54 is not dissimilar from our case. There was a defect in the service which was said to render it invalid on a jurisdictional basis. The court said that the irregularity or imperfection of the service thereof in order to deprive the court of jurisdiction must render the summons or the service so defective that a collateral impeachment is available and a service of process by the coroner not authorized to do so under the specified circumstances is not void, only voidable. The court nevertheless has jurisdiction. In this instance the service was quashed. But it was said that the plaintiff was entitled to proceed under the then statute, the saving statute was what it was, the § 3465 of the Wyoming Code, providing that where the plaintiff in an action commenced in time fails otherwise than on the merits he may commence a new action within one year thereafter. In this case the bar of limitations is not applicable. This is virtually the same statute that is on the Wyoming books at the present time and which we have referred to as the saving statute.

The court described the contention as being that the action was not commenced within five years for the reason that the service of summons issued upon the petition filed having been quashed because it was improperly directed to and served by the coroner instead of the sheriff, the service of summons was not sufficient for the commencement of the action within the meaning of the statute as applied in the limitation of action. The contention was that the summons was void and the service quashed. The action cannot be deemed to have commenced with its issuance (the summons) and therefore that it was not commenced within three months after rejection of the claim by the administrator. Under the special statute the suit was barred before a valid summons was issued.

Another question considered was whether the filing of the complaint and the issuance of the summons, which was afterwards quashed, operated to commence the action

so as to render applicable the statutory provision referred to, i.e. the saving clause. Within the meaning of the limitation statute is a clear quote: "an action shall be deemed commenced as to each defendant at the date of the summons which is served upon him or on a co-defendant who is a joint contractor or otherwise united in interest with him." This is a statute very similar to that which is now being brought into play. The court said that there was a failure of the cause within the meaning of § 3465, a failure by the plaintiff, otherwise than upon the merits, in an action commenced in due time so as to authorize bringing a new action within one year after the date of such failure. The court said that the service of summons by the coroner caused the action to have been commenced. The court added:

"the mere fact that the service was quashed does not determine the question for it is not every irregularity or imperfection in the summons or the service thereof which will deprive the court of jurisdiction. It may justify or require the setting aside of service upon motion or the reversal of the judgment upon a proper application. To have the effect of failing to give jurisdiction, the summons or service must be so radically defective that it would authorize a collateral impeachment of a judgment rendered on; that is to say it must be void and not merely voidable.

We hold that based upon the teaching of the *Clause* decision even if further service is necessary, the service of Sept. 4, 1980 at the abode of the defendant was not invalid and certainly was not void. Based upon that fact, the statute as to departure from the state, abscondence or concealment must be tolled in view of the avoidance antics of the defendant. The action was commenced. In our judgment the *Clause v. Columbia Savings & Loan Ass'n.,* though old, is a solid opinion and governs the saving clause problem that is here present.

An extensive annotation is found in 6 A.L.R. 3rd 1043, etc. and more particularly at 1047. The heading of the specific part of it is Rule that Renewal Statute is Applicable, § 3. The authors describe a vast number of cases under the following introductory statement:

According to what appropriately may be called a majority rule, renewal statutes, i.e. statutes permitting the reinstituting of suits disposed of on grounds not affecting the merits, are applicable to suits dismissed because of lack of jurisdiction. The following cases recognize the above rule either by their holdings or by statements to such effect.

Numerous cases set forth are state as well as federal courts. Particular attention is given to *Gaines v. New York,* the opinion of the New York Court of Appeals, which is set forth above.

An early Massachusetts case should be noted, *Woods v. Houghton,* 67 Mass. (1 Gray) 580 (1854). In that case the savings clause held to apply so as to entitle plaintiff who had commenced a trustee process in the wrong county whereby the case was dismissed to bring a new action in the proper county, the court stating that the real intent and meaning of the statute was that where a plaintiff has been defeated by some matter not affecting the merits—some defect or informality which he could remedy or avoid by a new process—the limitation statute would not be a bar to a new action commenced within the time designated in the renewal statute. This ancient case sets forth the rule in exact terms.

In conclusion our view is that it would be a terrible injustice if this case were to be dismissed based upon the service on the defendant being void, particularly in view of the conscientious efforts which were given to the serving. It would result in a principle which approves shooting and killing a human being and then escaping from liability avoiding being served with process, it means that an empty procedural incident can completely dispose of a case and deprive the injured party from her day in court. We conclude that regardless of the approach in this kind of situation the plaintiff in these circumstances is entitled to an opportunity to present her case. It is with

that in mind that we must disagree with the decision of final dismissal by the trial court. We remand the cause for a trial.

## THE CIVIL RIGHTS CLAIMS

*Immunity of the City.*

██ The trial court concluded that the City of Rock Springs was immune from any action under 42 U.S.C. § 1983 and on that ground dismissed Rock Springs from the lawsuit on the basis of *Oroz v. Board of County Commissioners,* 575 P.2d 1155 (Wyo. 1978). In the past state immunity law extended to a city. This is no longer true. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 changed all of this. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) was overruled. The conclusion was that the state would no longer control immunity in a federal civil rights claim.[1] *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise. *Id.* footnote 8, 284, 100 S.Ct. at 558. The decision of the Supreme Court in *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) has removed all doubt as to the sovereign immunity defense applying to municipalities. This was abrogated by the passage of § 1983. Accordingly the trial court must be reversed on this issue.

*What about the applicability of state law defenses?*

██ The City of Rock Springs' argument is that even if it is not immune, that an alternative ground exists which supports

dismissal of the § 1983 claim. This derives from 42 U.S.C. § 1988 which allows state law to govern civil rights suits where no federal law applies. The City's contention is that because the appellant Rosa, prior to the filing of this lawsuit, had sought and received a settlement of over $59,000 from the state's Workers' Compensation Fund, she is not entitled to further relief from the City. Wyoming Statute § 27–12–103 provides that acceptance of workmen's compensation is "in lieu of all other rights and remedies against any employer making contributions required by the act; or his employees acting within the scope of their employment unless the employee was culpably negligent." Rosa did accept such a settlement and the question is whether she is barred. The text of 42 U.S.C. § 1988 is set forth in a footnote below.[2] The Supreme Court has considered and has interpreted § 1988 in the case of *Moor v. County of Alameda,* 411 U.S. 693, 702, 93 S.Ct. 1785, 1792, 36 L.Ed.2d 596 (1973). The Supreme Court said:

> [T]he section is intended to complement the various acts which do create federal causes of action for the violation of federal civil rights.... But inevitably existing federal law will not cover every issue that may arise in the context of a federal civil rights action. Thus, § 1988 proceeds to authorize federal courts, where federal law is unsuited or insufficient 'to furnish suitable remedies; to look to principles of the common law, as altered by state law, so long as such principles are not inconsistent with the Constitution and laws of the United States.'

The courts are faced with the necessity for resolving inconsistency between state and federal law under § 1988. The courts must

---

**1.** *Monell* predates the incident which is present in this case.

**2.** The jurisdiction in civil ... matters conferred on the district courts by [the Civil Rights Acts] ..., for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect, but in all cases where they are

not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies ..., the common law as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil ... cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause ...."

look not only at particular federal statutes and constitutional provisions, but also at "the policies expressed in them." *Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978). An important aspect is whether the application of state law would be inconsistent with the federal policy underlying the cause of action under consideration. *Id.* at 590, 98 S.Ct. at 1995.

*Is there an undermining of federal policy present in the instant case?*

■ The answer is yes. To allow defendants here to escape liability by relying on state law defenses certainly interferes with the basic social policy which favors the enforcement of federal civil rights and it would also interfere with the policy of preventing abuses of power by those acting under color of state law. *Robertson v. Wegmann, supra,* at 591, 98 S.Ct. at 1995. There should be resort to state law only where the federal procedures or remedies are inadequate to provide relief. In the present case, if the plaintiff prevails at the trial, § 1983 would provide the appropriate relief. Application of the defenses urged by the defendant, however, would do away with any such relief.

The exclusive remedy of state Workers' Compensation statutes does not bar recovery against an employer under § 1983. *Hutchings v. Erie City and County,* 516 F.Supp. 1265 (W.D.Pa.1981); *Walker v. Rowe,* 535 F.Supp. 55 (N.D.Ill.1982). In *Walker* the court said: "The state statute upon which defendants rely, however, does not and could not preclude the vindication of plaintiff's constitutional rights in a federal form." *Id.* at 57.

The simple answer to the defendant's argument that Rosa's acceptance of Workers' Compensation bars any recovery under § 1983 because the state has pronounced workmen's compensation to be an exclusive is that the state law conflicts with the remedy provided by § 1983 and therefore it must be superseded in this lawsuit. The trial court did not address either of these issues but relied solely on the immunity proposition applying to the City. Our conclusion is that the state law defenses do not absolve the defendants of liability. It follows that the court's action in dismissing the City must be reversed.

We now address the second matter raised and that is the failure to give notice under the state law. District courts have consistently held that state notice of claim requirements do not apply in § 1983 suits. *Glover v. City of New York,* 401 F.Supp. 632 (E.D.N.Y.1975); *Perrote v. Percy,* 452 F.Supp. 604 (W.D.Wisc.1978); *Williams v. Posey,* 475 F.Supp. 133 (M.D.Ga.1979). The state should not be allowed to impose a condition precedent on the right to bring a § 1983 action.

*Does the plaintiff have standing to bring this action?*

It is contended by the defendants that there exists no survival of a civil rights claim and that the personal representative of the decedent has no independent cause of action under § 1983. Therefore, the argument goes, Rosa's § 1983 claim should have been dismissed by the court for failure to state a claim. Cantrell maintains that Wyoming only allows wrongful death damages in a suit of this nature and these are damages incurred after the decedent's death. Inasmuch as in the constitutional violation Rosa seeks to be compensated for damages which occurred when her husband Rosa was alive, Cantrell's argument goes that Wyoming will not permit a decedent's representative to obtain constitutional damages under § 1983.

■ Section 1988, *supra,* governs the decision as to the survivorship rule which is applicable. *Robertson v. Wegmann,* 436 U.S. at 588, 98 S.Ct. at 1994. In view of the fact that federal law does not cover the issue of the survival of civil rights action under § 1983 following the death of the plaintiff, § 1988 gives authority to the courts to look to state law to determine which actions survive. *Moor v. County of Alameda,* 411 U.S. at 702, 93 S.Ct. at 1792. These state survival statutes must not, however, be inconsistent with the Constitution and laws of the United States. *Robertson v. Wegmann, supra,* 436 U.S. at 590,

98 S.Ct. at 1995. There is a Wyoming statute which is applicable. It is § 1–4–101. It provides:

In addition to the causes of action which survive at common law, causes of action for mesne profits, injuries to the person, an injury to real or personal estate, or any deceit or fraud also survive. An action may be brought notwithstanding the death of the person entitled or liable to the same, but in actions for personal injury damages, if the person entitled thereto dies recovery is limited to damages for wrongful death.

Section 1–38–101 deals with actions for wrongful death which survive; and proceedings against executor or administrator of person liable. That statute states:

Whenever the death of a person is caused by wrongful act, neglect or default such as would have entitled the party injured to maintain an action to recover damages if death had not ensued, the person who would have been liable if death had not ensued is liable in an action for damages, even though the death was caused under circumstances as amount in law to murder in the first or second degree or manslaughter. If the person liable dies, the action may be brought against the executor or administrator of his estate. If he left no estate within the State of Wyoming, the court may appoint an administrator upon application.

Section 1–38–102, Wyoming Statutes deals with action to be brought by personal representative; recovery exempt from debts; measure and element of damages; limitation of action.

(a) Every such action shall be brought by and in the name of the personal representative of the deceased person.

(b) If the deceased left a husband, wife, child, father or mother, no debt of the deceased may be satisfied out of the proceeds of any judgment obtained in any action brought under the provisions of this Section.

(c) The court or jury, as the case may be, in every such action may award such damages, pecuniary and exemplary, as shall be deemed fair and just. *Every person for whose benefit such action is brought may prove his respective damages, and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for loss of probable future companionship, society and comfort.*

(d) Every such action shall be commenced within two (2) years after the death of the deceased person.

The courts have begun to distinguish survival actions from wrongful death actions. They find that they are distinct causes of action. *See White v. B.K. Trucking Co., Inc.,* 371 F.Supp. 578 (W.D.Okl. 1974). A survival claim is based on the decedent's claim for damages sustained during his lifetime. On the other hand a wrongful death action creates a new claim or cause of action for the loss sustained by statutory beneficiaries of the decedent (directly from his death). The wrongful death claim then is distinct from any that the deceased might have had if he had lived. 42 ALR FED. 163, 165, Survival of Civil Rights Action. *DeHerrera v. Herrera,* 565 P.2d 479 (Wyo.1977).

*What about the applicability of such a statute to a civil rights action pursuant to 42 U.S.C. § 1983?*

The cases hold that the decedent's heirs are allowed to file a wrongful death action under § 1983 to recover for damages suffered by the heirs as a result of the death. *Galindo v. Brownell,* 255 F.Supp. 930 (S.D.Cal.1966); *Mattis v. Schnarr,* 502 F.2d 588 (8th Cir.1974), on remand 404 F.Supp. 643, rev'd on other grounds 547 F.2d 1007 (8th Cir.) vacated on other grounds 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219; *Smith v. Wickline,* 396 F.Supp. 555 (Okla.1975); *Pollard v. United States,* 384 F.Supp. 304 (M.D.Ala.1974).

Authorities which hold that civil rights actions for damages suffered by the decedent survive the death of the injured party are *Salazar v. Dowd,* 256 F.Supp. 220 (D.C. Colo.1966); *Landrum v. Moats,* 576 F.2d

1320 (8th Cir.1978) (Nebraska law); *Hall v. Wooten,* 506 F.2d 564 (6th Cir.1974) (Kentucky law); *Spence v. Staras,* 507 F.2d 554 (7th Cir.1974) (Illinois law); *Troutman v. Johnson City,* 392 F.Supp. 556 (E.D.Tenn. 1973); *Beard v. Robinson,* 563 F.2d 331 (7th Cir.1977). A Fifth Circuit case, *Brazier v. Cherry,* 293 F.2d 401 (5th Cir.1961) held that an action against the Georgia police officers for the wrongful death of the deceased allegedly resulting from violations of § 1983 gave rise, by virtue of the Georgia survival statute, to a federally enforceable claim for damages during his lifetime and by his survivors. The court said:

> To make the policy of the Civil Rights Statutes fully effectual, regard has to be taken of both classes of victims. Section 1988 declares that this need may be fulfilled if state law is available. *Id.* at 409.

There do not appear to be any Wyoming cases which interpret the state survival or wrongful death statutes pursuant to § 1983. Nevertheless the supreme court of Wyoming has held that in a state court action where a decedent's death is due to the wrongful injuries, suit is permitted under either the survival statute or the wrongful death statute but not both. *Parsons v. Roussalis,* 488 P.2d 1050 (Wyo.1971). This ruling was based on the court's interpretation of the survival statute § 1–28, W.S.1957, which provides:

> In addition to the causes of action which survive at common law, causes of action . . . for *injuries to the person* . . . shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same provided that . . . if the person otherwise entitled thereto, dies, recovery shall be limited to damages for wrongful death. (Emphasis added).

In the plaintiff's complaint there are four claims: (a) wrongful death-negligence; (b) survival action for personal injury; (c) breach of express contract, and (4) breach of implied warranty. The court in disallowing one cause of action said:

> While we can fully agree that by the amendment in 1947 the legislature effec-

tively permitted a cause of action for personal injuries to survive, we reject plaintiff's thesis that it meant to allow recovery under both the survival statute and the wrongful death act. Where a decedent's death is due to wrongful injuries, suit is permitted under either § 1–28 or §§ 1–1065 and 1–1066; but recovery is limited to that stemming from wrongful death—pain and suffering of the decedent, according to the words of the statute, having no part in establishing damages. *Id.* at 1052.

The interpretation given in *Parsons, supra,* was reaffirmed in *DeHerrera v. Herrera,* 565 P.2d 479 (Wyo.1977). The Wyoming supreme court in that case interpreted the survival statute and held that an action for personal injuries survived after the injured party died of an illness unconnected with defendant's alleged negligence. The *DeHerrera* opinion criticized the ruling in *Parsons* in referring to the Kansas case of *Prowant v. Kings-X, Inc.,* 1959, 184 Kan. 413, 337 P.2d 1021, the Wyoming court said:

> . . . Thus was reached the same result we visualize exists in Wyoming by virtue of § 1–28, as interpreted by *Parsons,* along with our own holding here. The personal injury survival statute in Kansas had no such proviso as in § 1–28 but the court, by judicial interpretation, construed its wrongful death act to be the exclusive remedy if death ensued as a result of the negligence and the survival statute to apply if there was no death caused by the other. The court did there, by judicial fiat, what the Wyoming legislature has done by statute. The Kansas court later, on rehearing, in *Prowant v. Kings-X, Inc.,* reversed itself and concluded that the survival statute means what it says and allows a recovery on behalf of the estate for its losses, separate and apart from the wrongful death act.

In 1977 the Wyoming statute was amended. It states as follows:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, injuries to the person, an injury to a real or personal estate, or

any deceit or fraud also survive. An action may be brought notwithstanding the death of the person entitled or liable to the same, but in actions for personal injury damages, if the person entitled thereto dies recovery is limited to damages for wrongful death.

From a reading of the statute it would appear that it is a clarification and reaffirmation of the previous law.

Inasmuch as the allegations in Rosa's complaint survive her husband's death and seek damages for deprivation of the civil rights, it might be argued that it is a different claim from that for personal injuries.

The defendant has one further contention. His position is that the trial court erred in applying Fed.R.Civ.P. 3 in determining whether the § 1983 complaint was time barred by Wyoming's two year statute of limitations. In view of the determinations which we have made with respect to the service of process and considering our conclusion in that, the service at the defendant's abode on September 4th was valid. The fact that this was the last address that defendant had in Rock Springs and he resided there and his absence was for such a short period of time and his family remained at the Truman Street address during all of this time, his wife was in touch with him during this period and in view of the rulings which we have made with respect to the tolling statute, it is our conclusion that this issue is moot and is governed by our ruling with respect to the validity of the service under state rules. Therefore, the decision of the Supreme Court in *Walker v. Armco, supra,* does not come into play here.

In sum the judgment of the district court must be reversed in part I of the decision supra. We determined that the *Hanna v. Plumer, supra,* doctrine did not apply to this case and we stand by that. However, we have concluded that even under state law the service was entirely valid and so there is really no issue as between *Hanna v. Plumer, supra,* the federal rule of procedure, and *Walker v. Armco Steel Corp., supra,* because even under state law the service

was valid. It gave the defendant notice. True it eliminates the gamesmanship with respect to the statute of limitations. We have also ruled that the savings clause and the attempted service tolled the statute. We further rule that the City of Rock Springs is not immune from liability under § 1983. The order of dismissal must be therefore reversed. We further rule that the state law defenses of payment and failure to file notice of claim are inapplicable in § 1983 actions. We also concluded that the plaintiff Rosa clearly has standing to bring the wrongful death claim in connection with § 1983 of the Federal Civil Rights Code.